IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-CR-00469 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| HAROLD PEARL, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

Pending before this Court is Defendant Harold Pearl's ("Defendant") Motion to Dismiss Counts 1, 8, 9 and 10 of the Superseding Indictment filed on February 10, 2024 ("Defendant's Motion"). (Doc. No. 24.) On February 20, 2024, the United States of America filed a Response in Opposition to Defendant's Motion ("the Government's Response"). (Doc. No. 26.) Although given until February 27, 2024 to do so, Defendant did not file a reply in support of Defendant's Motion. Accordingly, Defendant's Motion is ripe for a decision.

I. **Background and Arguments**

On August 23, 2023, a grand jury in the Northern District of Ohio returned an indictment, charging Defendant with: Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 1); and five counts of Distribution of a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 2, 3, 4, 5 and 6). (Doc. No. 1.) On September 20, 2023, a grand jury in the Northern District of Ohio returned a Superseding Indictment charging Defendant with: two counts of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Counts 1 and 9); five counts of Distribution of a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 2, 3, 4, 5 and 6); and Distribution of a Controlled

Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); 18 U.S.C. § 2 (Count 7). (Doc. No. 14.)

On February 10, 2024, Defendant's Motion was filed, wherein Defendant asks this Court to dismiss Counts 1, 8, 9 and 10 of the Superseding Indictment "filed against him which charges possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and 924(c)(1)(A)(i)."[1] (Doc. No. 24, PageID # 131.) On February 20, 2024, the Government's Response was filed, wherein the Government correctly asserts that Defendant is charged in Counts 1 and 9 of the Superseding Indictment, but not in Counts 8 and 10. (Doc. No. 26, PageID # 142, fn. 1.) The Government, citing *United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir.), *cert. denied*, 144 S. Ct. 400 (2023), submits that the Court should not evaluate counts in which Defendant is not alleged to have committed the offense. (*Id.*) This Court agrees and finds that because Counts 8 and 10 do not apply to Defendant, but only to co-defendant Clarence Payne, and therefore, Defendant lacks standing to seek dismissal of Counts 8 and 10, that portion of Defendant's Motion seeking dismissal of Counts 8 and 10 is DENIED. Accordingly, this Memorandum Opinion and Order does not address or evaluate Defendant's arguments as to 18 U.S.C. § 924(c)(1)(A)(i).

On February 21, 2024, or after Defendant's Motion and the Government's Response were filed, a grand jury in the Northern District of Ohio returned a Second Superseding Indictment charging Defendant with: two counts of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Counts 1 and 9); five counts of Distribution of a Controlled Substance,

---

[1] In the Superseding Indictment and the Second Superseding Indictment, a violation of 18 U.S.C. § 924(c)(1)(A)(i) is only set forth in Count 8, which charges only co-defendant Clarence Payne – and not Defendant - with Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (Doc. No. 14, PageID # 90, Doc. No. 27, PageID # 199.)

in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and Distribution of a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); 18 U.S.C. § 2 (Count 7). (Doc. No. 27.)

Since Counts 1 and 9 charging Defendant with Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and (924)(a)(8) are identical in both the Superseding Indictment and the Second Superseding Indictment, the Court will construe Defendant's Motion as seeking dismissal of Counts 1 and 9 in the Second Superseding Indictment.

In counts 1 and 9 of the Superseding Indictment and the Second Superseding Indictment Defendant's prior criminal conviction punishable by more than a year in prison is identified as Domestic Violence and as having occurred on or about October 22, 2012, in Case Number CR-12-561576, in Cuyahoga County Court of Common Pleas. (Doc. No. 14, PageID #s 88, 91, Doc. No. 27, PageID #s 196, 199.)

In his Motion to Dismiss, Defendant makes two arguments based on the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). First, he argues that the Second Amendment's plain text covers the conduct prohibited by § 922(g)(1). (Doc. 24, PageID #s 133-136.) Second, he contends that the Government cannot show that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation and is thus unconstitutional under *Bruen*. (*Id*. at PageID #s 136-138.)

Generally, the Government responds that (1) *Bruen* did not call into question prior Sixth Circuit precedent that relied on *District of Columbia v. Heller*, 554 U.S. 570 (2008), and held that § 922(g)(1) is constitutional, (2) the Second Amendment's text, history, and tradition all support disarming felons, and (3) § 922(g)(1) is at least constitutional as applied to Defendant because of his dangerous criminal history.

3

## II. Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant can move to dismiss an indictment for failing to state an offense. "[A]t this stage of the proceedings, the indictment must be tested by its sufficiency to charge an offense." *United States v. Sampson*, 371 U.S. 75, 78-79 (1962). And the Court must take "the allegations of the indictment . . . as true." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952).

## III. Law and Analysis

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller*, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms regardless of militia service. 554 U.S. at 595, 598-99. Moreover, it held that the pre-existing, core right that the Second Amendment codified is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 635. Importantly, however, it also cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626.

"Relying on [this] language from *Heller*, [the Sixth Circuit] has held that § 922(g)(1) comports with the Second Amendment, stating that 'prohibitions on felon possession of firearms do not violate the Second Amendment,' and 'Congress's prohibition on felon possession of firearms is constitutional.'" *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010) (quoting *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010)). After *Heller*, the Sixth Circuit adopted the following two-prong approach to resolve Second Amendment challenges:

> Under the first prong, the court asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. . . . If the Government demonstrates that the challenged statute regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 [Bill of Rights ratification] or 1868 [Fourteenth Amendment ratification]—then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review.
>
> If the government cannot establish this—if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights. Under this prong, the court applies the appropriate level of scrutiny. If the law satisfies the applicable standard, it is constitutional. If it does not, it is invalid.

*United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (internal quotations and citations omitted).

In *Bruen*, the Supreme Court held that this two-prong approach is "one [prong] too many." 142 S. Ct. at 2126. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*.

Defendant argues that under *Bruen*, § 922(g)(1) is "presumptively unconstitutional." (Doc. No. 24, PageID# 133.) But the majority in *Bruen* reassured that the right to bear arms is still "subject to certain reasonable, well-defined restrictions." 142 S. Ct. at 2156 (citing *Heller*, 554 U.S. at 581); *see also id.* at 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).

The Eighth Circuit recently concluded that "[g]iven these assurances by the Supreme Court, and the history that supports them, . . . there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023); see also *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) ("The longstanding prohibition on

5

possession of firearms by felons is constitutional, and the district court properly denied the motion to dismiss."). This Court finds the Eighth Circuit's reasoning persuasive.

After citing the Supreme Court's assurances, the Eighth Circuit examined the history of firearm restrictions. England in the late 1600s disarmed non-Anglican Protestants and, later, Catholics who refused to renounce their faith. *Jackson*, 69 F.4th at 502. Colonial America prohibited Native Americans from owning firearms and disarmed religious minorities, such as Catholics. *Id.* at 502-03. During the Revolutionary War, the Continental Congress and several colonies prohibited people who refused to declare an oath of loyalty from possessing firearms. *Id.* at 503. After the war, some state legislatures disarmed people for non-violent hunting offenses. *Id.* The court concluded from this historical record that:

> [L]egislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons.

*Id.* at 505.

Two recent unpublished Sixth Circuit cases suggest that the Sixth Circuit would agree with the Eight Circuit's reasoning in *Jackson*. First, in *United States v. Vaughn*, 2023 U.S. App. LEXIS 25818 (6th Cir. Sep. 28, 2023), the court denied a defendant's motion for release pending appeal because he did not raise "substantial questions." *Id.* at *2. The defendant was convicted of § 922(g)(1) and asserted that he intended to challenge the denial of his motion to dismiss in which he argued that § 922(g)(1) violates the Second Amendment. *Id.* at *1. In denying his motion for release, the Sixth Circuit concluded that:

> [W]e unambiguously held in *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010), that felon-in-possession statutes do not violate the Second Amendment, and that

6

remains the binding law in this circuit. While we have not yet revisited this issue following the Supreme Court's decision *in New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and although there are numerous appeals pending before us that raise the issue, the vast majority of courts to have reconsidered the constitutionality of § 922(g)(1) post-*Bruen* have upheld it. *See, e.g., United States v. Gleaves*, 2023 U.S. Dist. LEXIS 20328 at *1 (M.D. Tenn. Feb. 6, 2023) (collecting cases). *Carey* remains the precedent in this circuit. Id. at *3.

Second, in *In re Clark*, 2023 U.S. App. LEXIS 30481 (6th Cir. Nov. 15, 2023), the court denied a defendant's successive 28 U.S.C. § 2255 motion where the defendant claimed he was "actually innocent" of his § 922(g) conviction based on *Bruen*. *Id.* at *2-3. The court concluded that "*Bruen* did not 'cast doubt on longstanding prohibitions on possession of firearms by felons.'" *Id.* at *3 (quoting *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring)). Several courts in this district, to include this Court, have also denied challenges to § 922(g)(1) based on similar reasoning. *See, e.g., United States v. Brown*, 2023 U.S. Dist. LEXIS 199389 (N.D. Ohio Nov. 7, 2023) (Lioi, C.J.); *United States v. Miller*, 2023 U.S. Dist. LEXIS 165705 (N.D. Ohio Sep. 18, 2023) (Brennan, J.); *United States v. Taylor*, 2023 U.S. Dist. LEXIS 161805 (N.D. Ohio Sep. 12, 2023) (Barker, J.).

Even in *Range v. AG United States*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc), where the Third Circuit found § 922(g)(1) unconstitutional, the court cautioned that its decision was "a narrow one" because the defendant challenged § 922(g)(1) only as applied to him and based on his individual circumstances. *Id.* In 1995, the defendant plead guilty to making a false statement to obtain food stamps. *Id.* at 98. The defendant's conviction was a misdemeanor but punishable by up to five years' imprisonment. Id. He twice tried to buy a hunting rifle—once in 1998 and a second time "years later." *Id.* at 98-99. He was rejected both times. *Id.* After

learning his 1995 conviction barred him from purchasing a rifle, he sued the Government, alleging that § 922(g)(1) violated the Second Amendment as applied to him. *Id.* at 99.

The Third Circuit agreed, in part because of the nonviolent nature of the defendant's prior conviction. *Id.* at 105; *see also id.* at 110 (Ambro, J., concurring, joined by Greenaway, Jr. and Montgomery-Reeves, JJ.) ("I join the majority opinion with the understanding that it speaks only to [the defendant's] situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like.").

Defendant does not make an as applied challenge to § 922(g)(1). But even if he did, Defendant's circumstances are distinguishable from those in *Range*. Defendant has prior criminal convictions for Domestic Violence, in violation of O.R.C. 2919.25, a felony of the third degree, and a conviction for Attempted Domestic Violence, a felony of the fifth degree (Do. (Doc. No. 26-1, PageID # 190, Doc. No. 26-2, PageID # 194.) These prior felony offenses involving violence cannot be fairly characterized as non-dangerous or otherwise analogous to making a false statement to obtain food stamps. *See, e.g., United States v. Jordan*, 2023 U.S. Dist. LEXIS 112765 at *6-7 (N.D. Ohio June 29, 2023) (Adams, J.) (rejecting contention that defendant's aggravated robbery, drug possession, escape, drug trafficking, and possessing a weapon while under disability convictions were not "dangerous" enough to prohibit him from possessing a firearm).

Accordingly, § 922(g)(1) does not violate the Second Amendment, particularly as applied to Defendant. The Court therefore denies Defendant's Motion to Dismiss Counts 1 and 9 of the Superseding Indictment and the Second Superseding Indictment.

IV.     Conclusion

For the reasons set forth above, the Court DENIES Defendant's Motion to Dismiss Counts 1 and 9 of the Superseding Indictment and Second Superseding Indictment.

**IT IS SO ORDERED.**

Date: February 29, 2023

   *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE